UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMARJEET KAUR, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0765 (RBW) |
| | ) | |
| MICHAEL CHERTOFF, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## <u>MOTION TO DISMISS THE AMENDED PETITION</u>

Pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3),

Respondents, Michael Chertoff, Secretary of DHS, et al., respectfully move to dismiss the above-

captioned matter for lack of subject matter jurisdiction and failure to state a claim upon which

relief can be granted.  A memorandum in support of this motion and a proposed order are

attached.

Respectfully submitted,

    s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney


            s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


            s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMARJEET KAUR, et al., | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Civil Action No. 06-0765 (RBW) |
| | ) |
| MICHAEL CHERTOFF, et al., | ) |
| | ) |
| Respondents. | ) |
| | ) |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS<br>THE AMENDED PETITION</u>

Respondents respectfully move to dismiss this case for lack of subject matter jurisdiction

and failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1),

12(b)(6), and 12(h)(3).

## BACKGROUND

Petitioner Balwinder Singh Malhi entered the United States of America illegally "on or

about October 17, 1996." 2005 WL 3508595 (Petitioner Balwinder Singh Malhi's Brief in <u>Malhi

v. Gonzales</u>, No. 04-73440 (9th Cir., August 6, 2005)). On February 26, 1998, the INS initiated

removal proceedings against Mr. Malhi. 2005 WL 3508595 (Government's Brief at 3). In his

removal hearing, through counsel, Malhi admitted the allegations against him, conceded that he

was removable from the United States, and renewed an earlier request for asylum, withholding of

removal and Voluntary Departure. <u>See</u> Malhi's Brief at 5; Government's Brief at 3. After

hearing, the Immigration Judge granted Malhi's application for Voluntary Departure. Malhi's

Brief at 5. Malhi was directed to report for deportation on April 20, 2004. <u>Id</u>. at 6. However,

Mr. Malhi remained in the United States and his attorneys filed a motion to reopen his removal

proceedings with the Bureau of Immigration Appeals (BIA) on April 21, 2004. Id. On April 10, 2006, the United States Court of Appeals for the Ninth Circuit dismissed in part and denied in part Mr. Malhi's petition for review of the BIA's denial of Mr. Malhi's motion to reopen removal proceedings. Malhi v. Gonzales, 176 Fed.Appx. 726 (9th Cir. 2006), rehearing denied. The Ninth Circuit specifically held that it lacks jurisdiction over "Malhi's contention that he did not receive adequate warnings from the immigration judge concerning the consequences of overstaying his voluntary departure period, as this claim was not exhausted before the BIA." Id. at 727 (citation omitted).

In this Court, Petitioners Amarjeet Kaur and Balwinder Singh Malhi filed a Petition for a Writ of Mandamus and Declaratory Judgment pursuant to the mandamus statute, 28 U.S.C. §1361, requesting that this Court order Respondents to adjudicate "Mrs. Kaur's Immigrant Petition for Alien Relative (Form I-130), filed on behalf of her husband, Mr. Balwinder Singh Malhi, on April 28, 2001." Pet. at 2. In the alternative, Petitioners moved for an order compelling "the adjudication of a more recent Immigrant Petition for Alien Relative (Form I-130) filed by Mrs. Kaur on behalf of her husband on February 22, 2005." Id. Petitioners also sought a declaratory judgment concerning "Mr. Malhi's Application for Employment Authorization (Form I-765), filed on April 12, 2005." Id. Respondents moved to dismiss Petitioners' lawsuit on August 30, 2006, explaining that the lawsuit had become moot. Document No. 5. The government's motion explained that the United States Citizenship and Immigration Services (CIS) issued a Notice of Approval of Relative Immigrant Visa Petition on July 10, 2006 regarding Mrs. Kaur's Form I-130. Ex. 1 attached. CIS explained that it lacked jurisdiction over Mr. Malhi's Form I-485 because, inter alia, "[a] review of the service file in

your case shows that you are in deportation/removal proceedings.  Therefore any application for

[lawful] permanent residen[ce] status [Form I-485] filed by you may only be considered in those

proceedings." <u>Id</u>. at 2.  A July 28, 2006 Employment Authorization Document Update/Inquiry

shows that Petitioner Malhi received employment authorization as of June 14, 2006, with an

expiration date of June 13, 2007.  Ex. 2 attached.  Thus, the government had granted Petitioners

the relief they were seeking and the case had become moot.

    In response to the motion to dismiss, Petitioners filed an opposition to the motion,

Document No. 7, and also amended their Petition.  Document No. 9.[1]  Petitioners, in their

Amended Petition, now advance the theory that the case is not moot because they are entitled to

an April, 2001 filing date for the Form-130 that CIS adjudicated.  Am. Pet. at ¶¶ 5 (regarding

alleged "April 28, 2001" filing date), 27 (alleging that a Form I-130 "was received by CIS on

April 30, 2001").[2]  Despite Petitioners' attempt to avoid dismissal of this lawsuit by amending

their Petition, this lawsuit should be dismissed because the Court lacks subject matter jurisdiction

over this case, because there is no relief that the Court can grant, and because, in the alternative,

Petitioners have received all the relief to which they arguably could be entitled and thus the case

is moot.  Moreover, as the Ninth Circuit explicitly held, no court has jurisdiction over

Petitioners' claims because Mr. Malhi did not voluntarily depart the United States and he did not

---

[1] Document No. 9 is styled as "Petition for a Writ of Mandamus and Declaratory Judgment," the same title as the initial Petition filed in this case.  Document No. 1.  For ease of reference, Respondents will refer to Document No. 9 as the "Amended Petition."

[2] <u>See also</u> Am. Pet. at ¶ 11 (alleging April 28, 2001 submission of Form I-130 Immigrant Petition for Alien Relative along with Form I-485 Application for Adjustment of Status), ¶ 16 (alleging February 22, 2005 submission of "new" Form I-130 Immigrant Petition for Alien Relative along with "new" Form I-485 Application for Adjustment of Status).

exhaust any arguments about his failure to depart before the BIA.  176 Fed.Appx. at 727.

## ARGUMENT

### A.    Legal Standard

Defendant moves for dismissal under Rule 12(b)(1), as the Court now lacks jurisdiction over the subject matter, and Rule 12(b)(6), as the Plaintiffs fail to state a claim upon which relief can be granted.  "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, Dep't. of Labor, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), affirmed, 346 F.3d 192 (D.C. Cir. 2003), cert. denied.  In addition, "[o]n a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence."  Thompson, 120 F. Supp. at 81.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.  Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.  In keeping with the latter, Defendants have attached various exhibits to this Memorandum.

4

Furthermore, a motion to dismiss brought pursuant to Rule 12(b)(6) should be granted if it is beyond doubt that a Plaintiff can demonstrate no set of facts that supports his claim entitling him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).

**B.**     **This Court Lacks Subject Matter Jurisdiction Over this Case Because Judicial Review is Precluded by Law and the Court Cannot Grant Petitioners the Relief they Seek Because Mr. Malhi Failed to Voluntarily Depart the United States.**

It is clear from applicable immigration laws that when an alien is subject to removal proceedings, any application for adjustment of status must be raised in those proceedings.  8 C.F.R. § 245.2(A)(1); 8 U.S.C. § 1252(a)(2)(B).  To the extent that the issues in this case relate to Mr. Malhi's attempts to adjust his status, this Court lacks jurisdiction to hear such arguments. Id.  Moreover, Section 240B(d)(1)(B) of the INA provides that an alien like Mr. Malhi who has failed to depart voluntarily under a voluntary departure order shall be ineligible, for a period of ten years, to receive any relief under, inter alia, Section 245 of the INA, concerning adjustment of status applications.  8 U.S.C. § 1229c(d).[3]  Mr. Malhi argued before the United States Court of Appeals for the Ninth Circuit that he should be relieved of the affect of Section 240B(d)(1)(B). That court rejected Mr. Malhi's argument as untimely and unexhausted.  176 Fed.Appx at 727. The Amended Petition filed in this Court is little more than a collateral attack on the Ninth

---

[3] That provision states that: "(d) Civil penalty for failure to depart (1) In general subject to paragraph (2), if an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien– **(A)** shall be subject to a civil penalty of not less than $1,000 and not more than $5,000; and **(B)** shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 1229b, 1255, 1258, and 1259 of this title."

5

Circuit's decision or, perhaps, an attempted end run around that decision.

The Amended Petition references the proceedings in the Ninth Circuit, Am. Pet. at ¶ 21. Petitioners erroneously claim that "Mr. Malhi is in the process of petitioning the court for a rehearing." Id. In fact, at the time of the filing of the Amended Petition, the rehearing petition had been denied. See docket sheet for Malhi v. Gonzales, No. 04-73440 (9th Cir.) (petition for rehearing denied on July 3, 2006 and mandate issued July 11, 2006). Petitioners seem to concede as much, shifting their focus in the Amended Petition and stating that although an application for adjustment of status must be made in removal proceedings, "this law deals only with Mr. Malhi's application for adjustment of status, not his application for employment authorization." Am. Pet. at ¶ 25 (citing 8 C.F.R. § 245.2) (emphasis omitted).

Just as here, before the Ninth Circuit, Mr. Malhi argued that the filing of a Form I-130 "on April 28, 2001" made him "eligible to apply for relief under § 245(I) of the INA." 2005 WL 3508595 at 5 (Petitioner Balwinder Singh Malhi's Brief in Malhi v. Gonzales, No. 04-73440 (9th Cir., August 6, 2005).[4] Mr. Malhi also explained to the Ninth Circuit that "On March 10, 2004, the Petitioner [Mr. Malhi] received a bag and baggage letter, to report for deportation on April 20, 2004." Id. at 6. Mr Malhi did not report for Voluntary Departure as directed, but instead remained in this country. Attorneys for Mr. Malhi moved to reopen removal proceedings on the basis that: (1) Mr. Malhi's prior attorney provided ineffective assistance of counsel; and (2) there is a pending adjustment of status application. Id. Mr. Malhi also argued to the Ninth Circuit that his ineffective assistance of counsel created the situation in which Mr. Malhi did not voluntarily depart the United States as he had agreed to do, but instead remained in this country "severely

_____

[4] Section 245(I) is codified at 8 U.S.C. § 1255(i).

prejudic[ing] his pursuit to legalize his status through adjustment based on INA § 245(I) [codified at 8 U.S.C. §1255(i)]. <u>Id</u>. at 8. Mr. Malhi went on to argue to the Ninth Circuit that his lawyers should have "detected that the application for voluntary departure would ultimately deprive [Mr. Malhi] of INA Section 245(I) benefits, since the failure to depart might result in the deprivation of a forum for [Mr. Malhi] to apply for adjustment of status." <u>Id</u>.

 This Court must dismiss this lawsuit for the reason that Mr. Malhi stated in his brief before the Ninth Circuit: since he had agreed to voluntarily depart the United States, but then remained, he is barred for ten years from obtaining any judicial relief under Section 245. That is, Malhi's purported "eligibility" for adjustment of status pursuant to the provisions of INA Section 245(I), which is the reason Petitioners here are interested in the "April 28, 2001" Form I-130 filing date, is readily disposed of. Malhi failed to depart the United States after a grant of voluntary departure, making him ineligible for adjustment of status under the statute. INA § 240B(d), 8 U.S.C. § 1229c(d). Malhi tried to convince the BIA and the United States Court of Appeals for the Ninth Circuit that he should be relieved of the impact of his application for voluntary departure due to ineffective assistance of counsel. The Ninth Circuit rejected Mr. Malhi's argument, because he failed to timely raise it with the BIA during his removal proceedings. 176 Fed.Appx at 727.

 Moreover, the Court must dismiss this lawsuit because Petitioners' claims were, or could have been, raised in the proceedings before the United States Court of Appeals for the Ninth Circuit. Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Drake v. FAA</u>, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94

7

(1980)).  Because Mr. Malhi could have, and in fact tried to, raise these issues in his removal

proceedings, this lawsuit is barred by claim preclusion.

**C.    In the Alternative, since CIS Has Acted on Petitioners' Form I-130 and
       Employment Authorization Request, the Case Should be Dismissed as Moot**.

Under Article III, section 2 of the Constitution, federal courts only have jurisdiction to

hear and decide actual "cases" or "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984); see

National Black Police Association v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997).

This requirement prevents the issuance of advisory opinions, as it demands the existence of an

actual dispute between adverse parties with a stake in the outcome.  See Richardson v. Ramirez,

418 U.S. 24, 36 (1974); see also City of Erie v. Pap's A.M., 529 U.S. 277, 305-06 (2000) (Scalia,

J. concurring).  In fact, "[n]o principle is more fundamental to the judiciary's proper role in our

system of government than the constitutional limitation of federal-court jurisdiction to actual

cases and controversies."  Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 37

(1976) (citing Flast v. Cohen, 392 U.S. 83, 95 (1968)).

The case-or-controversy requirement subsists "through all stages of federal judicial

proceedings." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).  The effect of post-

complaint changes in the facts or law on the continued existence of a particular controversy are

assessed through the lens of mootness.  See Arizonans for Official English v. Arizona, 520 U.S.

43, 68 n.22 (1997) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397

(1980)).

The United States Supreme Court explained that "federal courts are without power to

decide questions that cannot affect the rights of litigants in the case before them." DeFunis v.

_Odegaard_, 416 U.S. 312, 316 (1974) (quoting _North Carolina v. Rice_, 404 U.S. 244, 246 (1971));

_National Black Police Association_, 108 F.3d at 349.  This inability of the federal judiciary "'to

review moot cases derives from the requirement of Article III of the Constitution under which the

exercise of judicial power depends upon the existence of a case or controversy.'" _DeFunis_, 416

U.S. at 316 (quoting _Liner v. Jafco, Inc._, 375 U.S. 301, 306 n.3 (1964)); _see also_ _City of Houston

v. Department of Housing and Urban Development_, 24 F.3d 1421, 1426 (D.C. Cir. 1994)

("Federal courts lack jurisdiction to decide moot cases because their constitutional authority

extends only to actual cases or controversies") (quoting _Iron Arrow Honor Soc'y v. Heckler_, 464

U.S. 67, 70 (1983)).

   "Article III, Section 2 of the Constitution permits federal courts to adjudicate only 'actual,

ongoing controversies.'  If events outrun the controversy such that the court can grant no

meaningful relief, the case should be dismissed as moot."  _McBryde v. Committee to Review

Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States_,

264 F.3d 52, 55 (D.C. Cir. 2001) (citations omitted); _see also_ _Pharmachemie B.V. v. Barr

Laboratories, Inc._, 276 F.3d 627, 631 (D.C. Cir. 2002); _Fraternal Order of Police v. Rubin_, 134 F.

Supp.2d 39, 41 (D.D.C. 2001) (further noting that no justiciable controversy is presented when

the question to be adjudicated as been mooted by subsequent developments).  In other words, the

controversy must exist at the outset of the litigation and continue throughout the existence of the

suit.  _See_ _Columbian Rope Company v. West_, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (citing

_Arizonans for Official English_, 520 U.S. 43).  As this Circuit has explained:

> [E]ven where litigation poses a live controversy when filed, the [mootness]
> doctrine requires a federal Court to refrain from deciding it if "events have so
> transpired that the decision will neither presently affect the parties' rights nor have

a more-than-speculative chance of affecting them in the future."

Columbian Rope, 142 F.3d at 1316 (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C.

Cir. 1990) (en banc)).  See also Westmoreland v. National Transportation Safety Board, 833 F.2d

1461, 1462 (11th Cir. 1987) ("When effective relief cannot be granted because of later events, the

appeal must be dismissed as moot.")  (citing Murphy v. Hunt, 455 U.S. 478, 481 (1982)).[5]

In this case, the Court lacks subject matter jurisdiction over the Amended Petition

because events subsequent to the filing of the initial Petition in this case provided Petitioners

with their requested relief and ended any live controversy between the parties.  CIS has

adjudicated an immigrant petition for alien relative (Form I-130) and approved Mr. Malhi's

employment authorization application.  See Exs. 1 & 2.  That is, at bottom, the relief that

Petitioners are seeking.  See Am. Pet. at ¶ 27 (seeking order requiring CIS to adjudicate "either of

Mrs. Kaur's Petitions" and an order declaring "the denial of Mr. Malhi's employment

authorization was wrongful").  Petitioners also seek attorney's fees, but as explained below that

request does not create a live controversy between the parties.

Since CIS adjudicated the I-130 Petition for Alien Relative on July 10, 2006, Exhibit 1,

and approved Mr. Malhi's employment authorization application, Ex. 2, Petitioners have

received their requested relief and there is no longer any judicial function for the Court to play.

To the extent that Petitioners are trying to sustain their case by arguing that CIS should adopt the

filing date of April, 2001 for the Form-130, Am. Pet. at ¶ 27, or "preserve the April 2001 filing

---

[5]Mootness has been described as "'the doctrine of standing set in a time frame: The
requisite personal interest that must exist at the commencement of the litigation (standing) must
continue throughout its existence (mootness).'"  United States Parole Comm'n v. Geraghty, 445
U.S. 388, 397 (1980) (quoting Monaghan, Constitutional Adjudication: The Who and When, 82
Yale L.J. 1363, 1384 (1973)).

date," Document No. 7 at 1, their arguments fail for the reasons set forth in the preceding section

of this Memorandum.  See also Am. Pet. at 1 (seeking recognition of "the April 28, 2001 filing

date").  Since Malhi is ineligible for adjustment of status due to his failure to voluntarily depart

the United States after accepting a grant of voluntary departure, any claim in this Court about the

filing date of the Form I-130 is not only irrelevant but non-justiciable pursuant to the INA.

Moreover, the undersigned could find no legal support for the proposition that when two Form I-

130 petitions filed by the same person for the same purpose are pending[6] and one is adjudicated

by CIS, there remains a live dispute between the parties sufficient for judicial review.

Judge Sullivan recently dismissed a similar case, which was brought by the same counsel

as counsel for Petitioners in this case, for mootness.  Jackson et al. v. Chertoff, Civil No. 05-0959

(EGS) (April 10, 2006), Document No. 9 (a copy of which is attached for the Court's

convenience as Ex. 3).  In addition, the Court of Appeals has held on several occasions that

where a plaintiff files a complaint seeking agency action, and the action is taken subsequent to

the filing of the complaint, the case should be dismissed on mootness grounds.  For example, in

Action on Smoking and Health v. Department of Labor, 28 F.3d 162, 163 (D.C. Cir. 1994), the

plaintiff claimed that OSHA had "unreasonably delayed" in initiating a rulemaking proceeding.

Once OSHA issued a notice of proposed rulemaking, however, the Court found it unnecessary to

reach the merits of the claim and dismissed on the basis of mootness.  Id. at 164.  Similarly, in

Shoreham-Wading River Central School District v. United States Nuclear Regulatory

---

[6] Accepting as true for the purposes of this Motion and Memorandum Petitioners'
allegation that they did properly file a Form I-130 petition with INS, CIS' predecessor, by April
30, 2001.  There are strict filing requirements for petitions and Respondents in no way waive any
argument they may have that Petitioners failed to properly file their "April 28, 2001 Form-130."

11

Commission, 931 F.2d 102, 104 (D.C. Cir. 1991), petitioners filed a claim for relief based upon

the Nuclear Regulatory Commission's "failure to decide" a request for action under 10 C.F.R. §

2.206.  Once the Commission issued the final decision, "the unlawful delay claim [was] therefore

moot."  See also In re International Union, United Mine Workers of America, 231 F.3d 51, 54

(D.C. Cir. 2000); In re Arcadian Corp., 1995 WL 626501 (D.C. Cir. Oct. 4, 1999) (dismissing as

moot petition to compel issuance of OSHA decision once decision rendered and entered into the

public record); Associated Builders & Contractors, Inc. v. Herman, 976 F. Supp. 1, 8 (D.D.C.

1997) (claim attacking delay moot once rulemaking issued).

  Respondents' mootness argument also finds support in other causes of action where a

plaintiff's complaint seeks action on the part of a federal agency, and the action is performed

during the pendency of the case.  In cases brought under the Freedom of Information Act, 5

U.S.C. § 552 et seq. (FOIA), once all documents have been released to the requester, the cases

are properly dismissed on mootness grounds as there is no further judicial function for the Court

to perform.  See Crooker v. United States State Department, 628 F.2d 9, 10 (D.C. Cir. 1980)

("[o]nce the records are produced [in a FOIA case] the substance of the controversy disappears

and becomes moot since the disclosure which the suit seeks has already been made"); see also

Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987);  Trueblood v. Dep't of Treasury, 943 F.

Supp. 64, 67 (D.D.C. 1996).  Similarly, appeal from enforcement of a subpoena becomes moot

once a party has come into compliance with the subpoena.  See Office of Thrift Supervision v.

Dobbs, 931 F.2d 956, 957-58 (D.C. Cir. 1991) (citing numerous cases).

  It is clear that dismissal on mootness grounds is warranted here, based upon events

subsequent to the filing of this lawsuit, which sought to compel the adjudication of one of Mrs.

Kaur's petitions and approval of Mr. Malhi's employment authorization request. Pet. at ¶ 26;

Am. Pet at ¶ 27. Federal Rule of Civil Procedure 12(h)(3) directs that "[w]henever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the

court shall dismiss the action." Since there is no relief that the Court can grant, this lawsuit

should be dismissed as moot.[7]

**D.    The Court Lacks Subject Matter Jurisdiction Over this Lawsuit Because Petitioners Have Not Identified any Proper Basis for the Court's Jurisdiction.**

It is well-settled that the United States, as sovereign, "is immune from suit save as it

consents to be sued, and the terms of consent to be sued in any court define that court's

jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); United

States v. Testan, 424 U.S. 392, 399 (1976). Thus, a waiver of sovereign immunity is a

jurisdictional prerequisite to maintaining a lawsuit against the Federal government. United

States v. Mitchell, 463 U.S. 206 (1983).

Petitioners claim that the Court "has subject matter jurisdiction under the federal question

statute, 28 U.S.C. § 1331, and the mandamus statute, 28 U.S.C. § 1361." Pet. at ¶ 1. Petitioners

also cite the Administrative Procedure Act (APA), 5 U.S.C. § 706, and 28 U.S.C. §§ 2201 and

2202 concerning declaratory judgments. None of those statutory provisions waives the Federal

government's sovereign immunity as to Petitioners' allegations. As explained above, there is no

---

[7] The Prayer for Relief requests an award of attorney's fees. Such a claim is not enough to maintain a live controversy. See, e.g., Cammermeyer v. Perry, 97 F.3d 1235, 1238-39 (9th Cir. 1996); Doe v. Marshall, 622 F.2d 118, 120 (5th Cir. 1980). Further, in this matter, Petitioners have failed to establish a court judgment or other statutorily qualifying grounds to be a prevailing party, requiring the denial of any such claim. See Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 604-05 (2001).

13

"unreasonably delayed" agency action cognizable under the APA. Petitioners' reliance on 28

U.S.C. § 1331 is likewise misplaced. Section 1331 does not in itself waive sovereign immunity

and create jurisdiction in this Court. See, e.g., Gilbert v. DaGrossa, 756 F.2d 1455, 1458-59 (9th

Cir. 1985) (holding that plaintiff's suit against IRS auditors acting in their official capacity was

really a suit against the United States, which must be dismissed under the doctrine of sovereign

immunity); Coleman v. Bureau of Indian Affairs, 715 F.2d 1156 (7th Cir. 1983).

Similarly, the declaratory judgment provisions Petitioners cite do not confer subject

matter jurisdiction on the Court, but instead relate to the relief Petitioners could be awarded. See

Gianelli v. Chirkes, 377 F.Supp.2d 49, 51 (D.D.C. 2005) (citing C & E Services, Inc. of

Washington v. District of Columbia Water and Sewer Author., 310 F.3d 197, 201 (D.C. Cir.

2002) (finding that plaintiff could not rely upon 28 U.S.C. §2201 for subject matter jurisdiction,

but instead must establish an independent basis for jurisdiction). See also Skelly Oil Co. v.

Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950) (same).

**E.    The Extraordinary Remedy of Mandamus is Unwarranted.**

Even if the Court finds that Petitioners' action is not moot, they are not entitled to

mandamus relief. The Mandamus and Venue Act of 1962 ("The Mandamus Act") states that

"the district courts shall have original jurisdiction of any action in the nature of mandamus to

compel an officer or employee of the United States or any agency thereof to perform a duty owed

to the plaintiff." 28 U.S.C. § 1361. The Court's decision whether or not to exercise mandamus

jurisdiction is discretionary. Public Citizen v. Kantor, 864 F.Supp. 208 (D.D.C.1994). A

petition for a writ of mandamus is an extraordinary remedy that can be applied only in

exceptional circumstances. To meet the mandamus standard, there must be: 1) a clear right to

relief; 2) a plainly defined and nondiscretionary duty on the part of the defendant; and 3) no other adequate remedy available.  In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005); see Ganem v. Heckler, 746 F.2d 844, 852 (D.C. Cir. 1984) (noting that mandamus is "an extraordinary remedy [that] generally will not issue unless" these requirements are met) (citing Heckler v. Ringer, 466 U.S. 602, 616 (1984)).

The grant of mandamus relief is governed by Telecommunications Res. and Action Ctr. v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC").  In TRAC, the Court of Appeals established a six-part test to determine the reasonableness of agency delay and whether such delay is "so egregious as to warrant mandamus."  In re Bluewater, 234 F.3d. 1305, 1315 (D.C. Cir. 2000) (citing TRAC); see also In re American Rivers and Idaho Rivers United, 372 F.3d 413, 418 (D.C. Cir. 2004).  The TRAC six-part test provides that:

> (1) the time agencies take to make decisions must be governed by a "rule of reason," (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by delay, and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

750 F.2d at 79-80; see also In re Barr Lab., 930 F.2d 72, 74-75 (D.C. Cir. 1991). Further, even if there is a clear, statutorily-defined timetable for agency action, courts may not intervene if the agency has acted rationally and in good faith.  Sierra Club v. Gorsuch, 715 F.2d 653, 658 and n.36 (D.C. Cir. 1983) (citing National Congress of Hispanic American Citizens v. Usery, 554 F.2d.1196, (D.C. Cir. 1977)).

15

As to the first and second <u>TRAC</u> factors, the undersigned counsel is unaware of any Congressionally-mandated timetable for Respondents' action on Immigrant Petitions for Alien Relative (Form I-130) nor on Applications for Employment Authorization (Form I-765). Therefore, under <u>TRAC</u>, in evaluating whether agency delay constitutes an abuse of discretion cognizable under the APA or failure to render a nondiscretionary duty under the mandamus statute, the Court must apply a "rule of reason" analysis. <u>See TRAC</u>, 750 F.2d at 80. In applying this rule, delay by years alone is not per se "unreasonable delay." <u>See</u> <u>Mashpee Wampanoag Tribal Council, Inc. v. Norton</u>, 336 F.3d 1094, 1102 (D.C. Cir. 2003) ("that issue [whether the delay encountered should be deemed unreasonable] . . . cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency"); <u>In re Barr Lab.</u>, 930 F.2d at 75 (explaining that, although the agency missed a statutory deadline, "a finding that delay is unreasonable does not, <u>alone</u>, justify judicial intervention") (emphasis added)). The Court of Appeals reiterated the importance of competing agency priorities in <u>Mashpee Wampanoag Tribal Council</u>, where it declined to issue a writ in the face of a five-year delay on a tribe's petition for federal recognition as an Indian tribe. 336 F.3d at 1101.

Moreover, Petitioners' claims also seem to fall within the reach of several jurisdictional provisions of the Immigration and Nationality Act which vest exclusive jurisdiction in the Courts of Appeals. Pursuant to recent Congressional legislation, these provisions specifically preclude mandamus review in district court by expressly referencing 28 U.S.C. § 1361. <u>See</u> REAL ID Act at § 106(a). On May 11, 2005, the President signed the REAL ID Act into law. Section 106(a)

of the REAL ID Act makes significant amendments to the INA's jurisdictional statute at 8 U.S.C. § 1252, to clarify that district courts lack jurisdiction to review any removal order or removal-related claim for any alien. As a result, § 1252 now clearly precludes **all** review in district court of removal-related claims such as those presented in this case. Specifically, § 106(a)(3) of the REAL ID Act amended 8 U.S.C. § 1252(g), states as follows:[8]

> (g) EXCLUSIVE JURISDICTION. Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title,* no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The reference in § 1252(g) to "[e]xcept as provided in this section" refers to Section 1252, which provides that judicial review of removal orders is available only in the court of appeals through a petition for review; not in district court. Further, by making express reference to the mandamus statute at 28 U.S.C. § 1361, Congress made clear that there is no longer such jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."

**F.     The Manner in Which CIS Carries out its Duties is Committed to the Agency's Unreviewable Discretion**.

To the extent that Petitioners are complaining about the filing date of one of the Form I-130s at issue, USCIS's choice of administrative processes for adjudicating the Form I-130s, and evaluating their sufficiency, is committed to the Attorney General's unreviewable discretion. Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a), judicial review of

---

[8]  The emphasis is added to show the amended text.

17

agency action is precluded where that action "is committed to agency discretion by law."

Whether a decision is committed to agency discretion by law "is determined not only from [the

statute's] express language, but also from the structure of the statutory scheme, its objectives, its

legislative history and the nature of the administrative action involved." Colo. Envt'l. Coalition

v. Wenker, 353 F.3d 1221, 1228 (10th Cir. 2004) (per curiam) (quoting American Bank, N.A. v.

Clarke, 933 F.2d 899, 902 (10th Cir. 1991) (emphasis added)).  Although this exception most

often applies when the enabling legislation is "drawn so that a court would have no meaningful

standard against which to judge the agency's exercise of discretion," Heckler v. Chaney, 470 U.S.

821, 830 (1985), this is not the only circumstance in which the exception may apply.  See Tsegay

v. Ashcroft, 386 F.3d 1347 (10th Cir. 2004) (no review under the APA of BIA decision to issue

orders that affirm without opinion).  In particular, absent a showing of "substantial prejudice to

the complaining party," the Court's review of an agency decision is always circumscribed when

"a procedural rule is designed primarily to benefit the agency carrying out its functions," rather

than "intended primarily to confer important procedural benefits upon individuals."  Am. Farm

Lines v. Black Ball Freight Serv., 397 U.S. 532, 538-39 (1970); Vt. Yankee Nuclear Power Corp.

v. Natural Resources Defense Council, Inc., 435 U.S. 519, 544 (1978) ("[A] very basic tenet of

administrative law [is] that agencies should be free to fashion their own rules of procedure.").

See Int'l Immigrants Foundation, Inc. v. Reno, 1999 WL 787900 (E.D. N.Y.) ("plaintiffs have no

right, due process or otherwise, to dictate the method or speed at which the INS processes visa

lottery applications.  Administrative agencies are free to fashion their own rules of procedure

without interference by reviewing courts.") (citing Vt. Yankee Nuclear Power Corp., 435 U.S. at

525); Maldonado-Coronel v. McElroy, 943 F. Supp. 376, 381 (S.D. N.Y. 1996) ("The process by

which the application process for an adjustment of immigration status is conducted is an internal INS procedure and is therefore committed to the INS's discretion.").  Accordingly, CIS' action here is insulated from judicial review and Petitioners' attempted challenge to the assigned filing date should be dismissed on this basis as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Respondents' Motion to Dismiss and dismiss this case with prejudice.

Respectfully submitted,

    s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

    s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

    s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

19