## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
AMARJEET KAUR,  et al.,                          )
                                                )
                              Petitioners,       )
                                                )
          v.                                     )          Civil Action No. 06-765 (RBW)
                                                )
MICHAEL CHERTOFF, Secretary,                     )
Department of Homeland Security, et al.,         )
                                                )
                              Respondents.       )
                                                )
_____)        )


## MEMORANDUM OPINION

Petitioners Amarjeet Kaur and Baldwinder Singh Malhi ("the petitioners") bring this

action against various individuals in their capacities as officials of the United States Citizenship

and Immigration Services ("USCIS") and its parent department, the United States Department of

Homeland Security ("DHS") (collectively "the respondents"),[1] seeking (1) a writ of mandamus

compelling the adjudication of the Form I-130 Immigrant Petition for Alien Relative ("I-130

petition") filed by Kaur on Malhi's behalf on April 28, 2001; and (2) a declaratory judgment

stating that the USCIS improperly denied the Form I-765 Application for Employment

Authorization ("I-765 application") filed by Malhi on April 12, 2005.  Amended Petition for a

Writ of Mandamus and Declaratory Judgment ("Pet.") at 1-2.  Currently before the Court is the

_____
[1] Specifically, the petitioners name the following individuals as respondents in this matter: (1) Michael
Chertoff, Secretary of Homeland Security; (2) Robert Cowan, Director of the National Benefits Center, a division of
the USCIS; and (3) Phyllis Howard, the District Director for the USCIS's Virginia office.  Amended Petition for a
Writ of Mandamus and Declaratory Judgment ("Pet.") ¶¶ 7-9.

respondents' motion to dismiss the petitioners' petition pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted.[2]  Motion to Dismiss the

Amended Petition ("Resps.' Mot.") at 1.  Specifically, the respondents argue, inter alia, that the

petition should be dismissed because (1) under the Immigration and Nationality Act ("INA"), 8

U.S.C. §§ 1101 et seq. (2006), as amended by the Illegal Immigration Reform and Immigrant

Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, Div. C, 110 Stat. 3009-546 (1996), and

the REAL ID Act of 2005, Pub. L. 109-13, Div. B, 119 Stat. 231 (2005), Congress has precluded

district courts from exercising jurisdiction over claims similar to those brought in the petition

now before this Court that have been filed by or on behalf of aliens, including petitions for writs

of mandamus, Memorandum in Support of Motion to Dismiss the Amended Petition ("Resps.'

Mem.") at 16-17 (citing 8 U.S.C. § 1252(g) (2006)); (2) Malhi's failure to voluntarily depart the

United States within the timeframe allotted to him statutorily bars him from receiving the relief

that he seeks, id. at 5-7 (citing 8 U.S.C. § 1229c(d)(1)(B) (2006)); (3) the petitioners are not

entitled to mandamus relief because they have failed to identify any nondiscretionary duty owed

to them by the respondents, id. at 14-19; and (4) "events subsequent to the filing of the initial

[p]etition in this case [have] provided [the] [p]etitioners with their requested relief and ended any

live controversy between the parties," id. at 10; see id. at 8-13.  For the reasons set forth below,

the Court grants the respondents' motion to dismiss.

---

[2]  The following papers have been submitted in connection with this motion:  (1) Respondents'
Memorandum in Support of Motion to Dismiss the Amended Petition ("Resps.' Mem."); (2) Petitioners' Opposition
to Respondents' Motion to Dismiss the Amended Petition ("Pets.' Opp."); and (3) Respondents' Reply to
Petitioners' Opposition to Respondents' Motion to Dismiss the Amended Petition ("Resps.' Reply").

## I. Factual Background

The following facts are undisputed by the petitioners.[3]  Malhi, an Indian national, entered

the United States illegally in October 1996.  Pet. ¶ 6 (stating that "Malhi is a native and citizen of

India"); Resps.' Mem. at 1 (quoting Brief of Petitioner Balwinder Singh Malhi in <u>Malhi v.

Gonzales</u>, No. 04-73440, 2005 WL 2570859, at *2 (9th Cir. Aug. 6, 2005) ("Pet.'s Brief")); <u>see

also</u> Pet.'s Brief at *6 (stating that Malhi "entered the United States without inspection near

Blaine, Washington, at some point on or after 10/17/96") (citation omitted).[4]  In February 1998,

the Immigration and Naturalization Service ("INS")—the predecessor of respondent USCIS and

a component agency of the Department of Justice ("DOJ")—commenced deportation

proceedings against Malhi, charging him "as an alien present in the United States without

admission or parole."[5]  Pet.'s Brief at 2; <u>see also</u> Resps.' Mem. at 1.  At an initial hearing held

---

[3]  "In [Rule] 12(b)(1) proceedings, it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on [its] authority to entertain the case." <u>Haase v. Sessions</u>, 835 F.2d 902, 906 (D.C. Cir.1987) (internal citations and quotation marks omitted); <u>see also</u> <u>Sadhvani v Chertoff</u>, 460 F. Supp. 2d 114, 118 (D.D.C. 2006) (observing that "a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear [a] case, as long as it still accepts the factual allegations in the complaint as true") (citing <u>Jerome Stevens Pharm., Inc. v. FDA</u>, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005)) (other citations omitted).

[4]  The Court relates certain representations made by Malhi in his 2005 brief submitted to the United States Court of Appeals for the Ninth Circuit—which have been cited by the respondents in this case and are undisputed by the petitioners—as part of its general "authority to [take] judicial[] notice [of] related proceedings in other courts." <u>Dupree v. Jefferson</u>, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (citations omitted) (referencing allegations made in plaintiff's complaint in related civil case).  Both the circumstances giving rise to Malhi's Ninth Circuit appeal and the resolution thereof are described in greater detail below.

[5]  The INS was abolished in March 2003, and its functions were transferred to three newly created agencies within the DHS: the United States Immigration and Customs Enforcement, the United States Customs and Border Protection, and the USCIS.  Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 271, 291 (2006)); <u>see</u>, <u>e.g.</u>, <u>Mahmoud v. Gonzales</u>, ___ F.3d ____, ____, 2007 1299877, at *1 n.1 (1st Cir. May 4, 2007) (describing dissolution of the INS and the transfer of authority over immigration functions to the DHS).  Of these agencies, the USCIS "is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services, policies and priorities." About USCIS, United States Citizenship and Immigration Services, <u>at</u> http://www.uscis.gov/aboutus.htm (last visited May 18, 2007); <u>see also</u> <u>Abiodun v. Gonzales</u>, 461 F.3d 1210, 1211 (10th Cir. 2006) (stating that the USCIS "is

(continued...)

3

before an Immigration Judge ("IJ") in August 1999, Malhi conceded that his status made him

subject to removal from the United States, Resps.' Mem. at 1; Pet.'s Brief at *1; Brief of the

Attorney General in <u>Malhi v. Gonzales</u>, No. 04-73440, 2005 WL 3508595, at *4 (9th Cir. Sep.

26, 2005) ("Gov't's Brief") (stating that "Malhi admitted the allegations against him[] [and]

conceded that he was removable from the United States") (citation omitted), but asserted several

defenses against his deportation, <u>see</u> Pet.'s Brief at *1; Gov't's Brief at *4-5.  In addition to these

defenses, Malhi requested that he be permitted to voluntarily depart the United States in lieu of

formal deportation or removal.  Resps.' Mem. at 1; Pet.'s Brief at *3; <u>see</u> 8 U.S.C. § 1229c(a)(1)

(stating that "[t]he Attorney General may permit an alien voluntarily to depart the United States

at the alien's own expense . . . in lieu of being subject to [deportation or removal proceedings] . .

. or prior to the completion of such proceedings").

On April 13, 2001, while a hearing on the merits of the INS's removal action remained

pending, Malhi married co-petitioner Kaur, who was then a legal permanent resident ("LPR") of

_____

[5](...continued)
responsible for the adjudication of immigrant and visa petitions, naturalization petitions, and asylum and refugee applications, [as well as] adjudications performed at INS service centers") (citing 6 U.S.C. § 271(b)).  In addition, responsibility for certain adjudicative functions remains with the DOJ, under the direction of the Executive Office for Immigration Review ("EOIR").  <u>See</u> Organizational Information and Breakdown, Executive Office for Immigration Review, <u>at</u> http://www.usdoj.gov/eoir/orginfo.htm (last visited May 18, 2007); <u>see also</u> <u>Mahmoud</u>, ___ F.3d at ____, 2007 1299877, at *1 n.1 (stating that "the Attorney General retained the adjudicative and discretionary functions exercised through the [Immigration Judges] and the [Board of Immigration Appeals]") (citation omitted).  As discussed in this Memorandum Opinion, the applicable statutory provisions do not yet reflect in comprehensive fashion the transfer of authority over many immigration services—most pertinently, <u>inter alia</u>, the processing of alien petitions for adjustment of status—from the DOJ to the DHS.  <u>Compare</u>, <u>e.g.</u>, 8 U.S.C. § 1255(a) (2006) (stating that the status of an eligible petitioning alien "may be adjusted <u>by the Attorney General</u>, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence") (emphasis added), <u>with</u> 6 U.S.C. § 271(b)(1) (transferring, <u>inter alia</u>, the authority for the "[a]djudication[] of immigrant visa petitions" from the Director of the INS to the Director of USCIS).

the United States.[6]  Pet. ¶ 10.  Kaur then submitted an I-130 petition on Malhi's behalf on April

28, 2001, id. ¶ 11; Resps.' Mem. at 2, seeking classification of Malhi as the spouse of an alien

lawfully admitted for permanent residence, see 8 U.S.C. § 1154(a)(1)(B)(i) (2006) (stating that

"any alien lawfully admitted for permanent residence claiming that an alien is entitled to a

classification by reason of a relationship described in [8 U.S.C. § 1153(a)(2) (2006)] may file a

petition with the Attorney General for such classification").  Petition, Exhibit ("Ex.") 4 (April 28,

2001 I-130 Petition) at 2-4.  Aliens who are classified as immigrant spouses of LPRs can

themselves become eligible for adjustment to LPR status, see 8 U.S.C. §§ 1153(a) (detailing the

procedure for the allocation of immigrant visas to qualified relatives of permanent resident

aliens); see also 8 U.S.C. § 1255 (2006) (describing the procedure for eligible petitioning aliens

to adjust their status to that of aliens lawfully admitted for permanent residence), although they

are subject to stringent immigrant visa quotas, both globally and on a country-by-country basis,

before their applications for adjustment can be processed, see 8 U.S.C. §§ 1151(a)(1),

1153(a)(2)(A) (2006).[7]  In addition, and more importantly, alien spouses who, like Malhi, entered

the country illegally and without inspection are only eligible to be considered for adjustment to

LPR status if their I-130 petition was filed on or before April 30, 2001.  8 U.S.C. §

1255(i)(1)(B)(i) (stating that "an alien physically present in the United States . . . who . . . entered

the United States without inspection . . . [and whose I-130 petition was filed] on or before April

---

[6]  A legal permanent resident is an individual who "[has] been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws" and who therefore possesses an immigrant visa.  8 U.S.C. § 1101(a)(20) (2006).  Legal permanent residents are not naturalized United States citizens, although it is possible for them to attain naturalized citizenship at a later date.  See 8 U.S.C. §§ 1422, 1427 (2006).

[7]  There is no such quota for the issuance of immigrant visas to the alien spouses of United States citizens. 8 U.S.C. § 1151(a)(2)(A)(i).

30, 2001, . . . may apply to the Attorney General for adjustment of his or her status to that of an [LPR]"); see Pet.'s Brief at *9 (stating that the April 28, 2001 I-130 petition "made [Malhi] eligible to obtain a [v]isa and to apply for adjustment despite . . . the fact of his illegal entry"). Thus, along with the April 2001 I-130 petition, the petitioners also submitted an Application to Register Permanent Resident or Adjust Status ("I-485 application"), seeking the adjustment of Malhi's status from alien to LPR. Pet. ¶ 11; see also Pet., Ex. 4 (Petition for alien husband under [INA] Section 245(i)) at 8-11.

After a March 1, 2002 hearing on the merits of the removal proceedings (and before the INS had acted on the April 2001 I-130 petition), the IJ granted Malhi's request for voluntary departure and denied him relief on all other grounds. Resps.' Mem. at 1; Pet.'s Brief at *4. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision on June 10, 2003, Pet.'s Brief at *5, and Malhi was ultimately directed to report on April 20, 2004, for voluntary departure from the United States, Resps.' Mem. at 1; Pet.'s Brief at *6. However, Malhi failed to comply with the voluntary departure order. Resps.' Mem. at 1; Pet.'s Brief at *9. Rather, he remained in the United States and, on April 21, 2004, moved for the BIA to reopen his removal proceedings on the grounds, inter alia, of ineffective assistance of counsel. Resps.' Mem. at 1-2; Pet.'s Brief at *10-11. The BIA denied this motion to reopen as untimely on June 9, 2004, and Malhi appealed that decision to the United States Court of Appeals for the Ninth Circuit. Resps.' Mem. at 2; Pet.'s Brief at *11.

On October 18, 2004, Malhi filed an I-765 application for an Employment Authorization Document ("EAD"), requesting authorization for employment during the pendency of his I-485 application for an adjustment of his status. Pet. ¶ 14; see also 8 C.F.R. § 274a.12(c)(9) (2007)

(stating that "[a]n alien who has filed an application for adjustment of status to [LPR] . . . will not be deemed an 'unauthorized alien' . . . while his . . . properly filed Form I-485 application is pending final adjudication, if the alien has otherwised obtained permission from [the USCIS] . . . to engage in employment").  The USCIS denied Malhi's I-765 application on February 14, 2005, concluding that he was ineligible for employment authorization because "[s]ervice records do not indicate [the existence of] . . . a pending Form I-485 . . . filed with [the agency] . . . prior to or concurrent with the filing of the Form I-765."  Pet., Ex. 9 (February 14, 2005 letter from the USCIS to Balwinder Malhi) at 1; see also Pet. ¶ 15.  Malhi—along with Kaur, who had become a naturalized United States citizen in September 2004, id. ¶ 13—then filed a second I-485 adjustment application (as well as a second I-130 relative immigrant petition) on February 22, 2005, id. ¶ 16, and a renewed I-765 application for an EAD on April 12, 2005, id. ¶ 18.  On June 21, 2005, the USCIS denied Malhi's second I-765 application without prejudice, stating that his I-485 adjustment application "had been administratively closed pending resolution of his removal proceedings," id. ¶ 20, and that he had therefore "failed to establish eligibility for employment authorization under 8 C.F.R. [§§] 274.12(a) or (c)," id., Ex. 14 (August 23, 2005 letter from the USCIS to Balwinder Malhi).

On April 10, 2006, the Ninth Circuit denied, in part, and dismissed, in part, Malhi's petition for review of the BIA's denial of his motion to reopen his removal proceedings.  Malhi v. Gonzales, 176 Fed. Appx. 726, 2006 WL 925246 (9th Cir. April 10, 2006), reh'g denied; see Pet. ¶ 21; Resps.' Mem. at 2.  In so doing, the Ninth Circuit held, inter alia, that it "lack[ed] jurisdiction over Malhi's contention that he did not receive adequate warnings from the immigration judge concerning the consequences of overstaying his voluntary departure period, as

this claim was not exhausted before the BIA." Malhi, 176 Fed. Appx. at 727. Malhi then filed

the instant action with this Court on April 26, 2006, seeking to compel "adjudicat[ion] [of] either

of Mrs. Kaur's [I-130 petitions]" and requesting a declaratory judgment that Malhi's April 2005

I-765 application for an EAD was wrongfully denied. Original Petition ¶ 26.

On July 10, 2006, the USCIS issued a Notice of Approval of Relative Immigrant Visa

Petition regarding Kaur's I-130 petition.[8] Resps.' Mem., Ex. 1 ("Notice of Approval"); see also

Resps.' Mem. at 2. This Notice stated that Malhi "has been given the appropriate classification"

of an alien spouse of a United States citizen. Notice of Approval at 1. It further stated, however,

that "[a] review of [Malhi's] service file . . . shows that [he is] in deportation/removal

proceedings," and that "[t]herefore any application for permanent resident status filed by [him]

may only be considered in those proceedings." Id. at 2; see 8 C.F.R. § 245.2(a)(1) (2007) (stating

that "[a]fter an alien . . . is in deportation or removal proceedings, his or her application for

adjustment of status . . . shall be made and considered only in those proceedings"). In response

to this Notice, the petitioners filed an amended petition with this Court on September 27, 2006.[9]

---

[8] Although the Notice did not specifically state which of Kaur's I-130 petitions had been approved, it indicated that it was adjudicating an I-130 petition filed on March 10, 2005. Notice of Approval at 1. The Court notes, however, that (1) the petitioners claim that their second I-130 petition was filed three weeks earlier, on February 22, 2005, Pet. ¶ 16, and (2) the I-130 petition attached to the Notice is clearly Kaur's earlier April 2001 I-130 petition, Notice of Approval at 3-4. Neither party has drawn attention to these discrepancies, nor contended that they are material to the resolution of this action.

[9] In addition, the respondents allege, and the petitioners do not dispute, that Malhi received employment authorization from the USCIS "as of June 14, 2006, with an expiration date of June 13, 2007." Resps.' Mem. at 3; see id., Ex. 2 (Employment Authorization Document Update/Inquiry for Balwinder Malhi). The respondents argue that the petitioners' request for a declaratory judgment is therefore moot. Resps.' Mem. at 3. Although the amended petition repeats the petitioners' request for declaratory relief regarding the allegedly wrongful denial of Malhi's April 2001 I-765 application, Pet. ¶ 27, the petitioners' opposition to the government's motion to dismiss appears to concede that such relief is no longer necessary, see Pets.' Opp. at 1 (stating only that "[the] [p]etitioners maintain the right to compel the adjudication of Mrs. Kaur's initial [I-130 petition] and to preserve the April 2001 filing date"). In any event, it is clear that if Malhi has indeed now received employment authorization—something which the petitioners nowhere dispute—then the petitioners' request for declaratory relief on this claim is moot. Accordingly,

(continued...)

See Motion to Amend Petition for Writ of Mandamus at 2 (stating that "the [p]etitioners seek to clarify [their] request for the adjudication of both [I-130] petitions, as the wording may have confused [the] [p]etitioners' actual intent"). In the amended petition, the petitioners revise their prayer for relief to specifically "request that . . . [the] USCIS recognize the filing date of the original [I-130] petition which was received by [the] USCIS on April 30, 2001." Pet. ¶ 27 (emphasis in original).

The respondents moved to dismiss the amended petition on October 20, 2006, arguing, inter alia, that (1) the INA divests district courts of jurisdiction over claims such as those raised by the petitioners, including claims brought under the federal mandamus statute, Resps.' Mem. at 16-17 (citing 8 U.S.C. § 1252(g)); (2) Malhi's failure to voluntarily depart the United States within the allotted time period statutorily bars him from receiving the relief he requests, id. at 5-7 (citing 8 U.S.C. § 1229c(d)(1)(B)); (3) the petitioners are not entitled to mandamus relief because they have failed to identify any nondiscretionary duty owed to them by the respondents, id. at 14-19; and (4) "events subsequent to the filing of the initial [p]etition in this case [have] provided [the] [p]etitioners with their requested relief and ended any live controversy between the parties," id. at 10; see id. at 8-13. In response, the petitioners contend that a live controversy exists between the parties because the respondents have refused to recognize the April 2001 filing date of Kaur's first I-130 petition on behalf of Malhi. Pets.' Opp. at 3-5. According to the petitioners, this "failure to adjudicate Mrs. Kaur's original petition has unduly burdened [them,] in that it has affected Mr. Malhi's ability to adjust his immigration status as a beneficiary of the petition." Id.

---

[9](...continued)
the Court dismisses the petitioners' claim regarding the allegedly wrongful denial of the April 2001 application for an EAD.

at 4.  Similarly, the petitioners assert that mandamus relief is warranted in this situation because
the USCIS has unreasonably delayed adjudication of the April 2001 I-130 petition.  Id. at 6-8; see
id. at 6 (stating that "RESPONDENTS HAVE FAILED TO ACT ON MRS. KAUR'S
ORIGINAL PETITION FOR OVER FIVE YEARS") (capitals in original).  However, the
petitioners' opposition to the motion to dismiss entirely fails to address the respondents'
arguments regarding the Courts' alleged lack of jurisdiction under § 1252(g), the purportedly
preclusive effect of Malhi's failure to abide by his voluntary departure order, and the assertedly
discretionary nature of the action which the petitioners seek to compel.[10]  See generally Pets.'
Opp.

## II. Standards of Review

### A.  Motions to Dismiss Under Rule 12(b)(1)

Once a defendant has moved to dismiss a case pursuant to Rule 12(b)(1), "the plaintiff
bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the
evidence."  Erby v. United States, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (citing Lujan v.
Defenders of Wildlife, 504 U.S. 555, 561 (1992)) (other citations omitted).  "The [C]ourt, in
turn, has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional
authority."  Abu Ali v. Gonzales, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) (internal quotation marks

---

[10]  To the extent the petitioners have failed to address certain arguments advanced by the respondents in
support of their motion to dismiss, these arguments may technically be deemed conceded.  See Buggs v. Powell, 293
F. Supp. 2d 135, 141 (D.D.C. 2003) (reiterating that "[i]t is understood in this Circuit that when a plaintiff files an
opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat
those arguments that the plaintiff has failed to address as conceded") (citing FDIC v. Bender, 127 F.3d 58, 67-68
(D.C. Cir. 1997)); see also Twelve John Does v. District of Columbia, 117 F.3d 571, 577 (D.C. Cir. 1997) (stating
that "[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, [the
District of Columbia Circuit] honor[s] its enforcement of that rule") (citation omitted).  Nonetheless, in the interests
of justice, the Court will consider the respondents' arguments on their merits.

and citation omitted). A court ruling on a Rule 12(b)(1) motion to dismiss "may consider materials outside the pleadings" to determine whether it has jurisdiction over the underlying claims. Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1254 (D.C. Cir. 2005) (citation omitted); see also Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (stating that "[i]n [Rule] 12(b)(1) proceedings, it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on [its] authority to entertain the case") (internal citations and quotation marks omitted). However, where the defendant is challenging the complaint's assertion of jurisdiction as facially invalid, "the court must still accept all of the factual allegations in the complaint as true." Jerome Stevens Pharm., 402 F.3d at 1254 (internal quotation marks and citations omitted); see Erby, 424 F. Supp. 2d at 182 (noting that where "a defendant mounts a 'facial' challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party") (citations omitted).

### B. Motions to Dismiss Under Rule 12(b)(6)

When evaluating a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff[s] the benefit of all reasonable inferences [that can be derived] from the facts alleged." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted). However, the Court "need not . . . accept inferences that are unsupported by the facts set forth in the complaint . . . [or] legal conclusions cast in the form of factual allegations." Islamic Am. Relief Agency v.

11

Gonzales, 477 F.3d 728, 732 (D.C. Cir. 2007) (citations omitted).  The Court may only consider

the facts alleged in the complaint, any documents attached to the complaint as exhibits, and

matters about which the Court may take judicial notice in addressing a Rule 12(b)(6) motion.

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997).  A complaint

may be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any

set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema, 534

U.S. 506, 514 (2002); see also Abigail Alliance For Better Access to Developmental Drugs v.

Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006) (holding that "[a] court should not dismiss

a complaint pursuant to Rule 12(b)(6) for failure to state a claim 'unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief'") (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### III. Analysis

*A.  District Court Jurisdiction under 8 U.S.C. § 1252(g)*

The respondents first argue that 8 U.S.C. § 1252(g), as enacted as part of the IIRIIRA,

Pub. L. 104-208, Div. C, 110 Stat. 3009-546 (1996), and amended by the REAL ID Act of 2005,

Pub. L. 109-13, Div. B, 119 Stat. 231 (2005), divests district courts of all jurisdiction over claims

such as those raised by the petitioners.  Resps.' Mem. at 16-17.  Section 1252(g), which is

entitled "Exclusive Jurisdiction," states that

> [e]xcept as provided in [8 U.S.C. § 1252] and notwithstanding any other provision
> of law (statutory or nonstatutory) including [28 U.S.C. § 2241] or any other habeas
> corpus provision, and [28 U.S.C. §§ 1361 and 1651], no court shall have jurisdiction
> to hear any cause or claim by or on behalf of any alien arising from the decision or
> action by the Attorney General to commence proceedings, adjudicate cases, or
> execute removal orders against any alien under this chapter.

12

8 U.S.C. § 1252(g); see Resps.' Mem. at 16 (arguing that this provision "vest[s] exclusive

jurisdiction in the Courts of Appeals . . . [and] specifically preclude[s] mandamus review in

district court[s]"). Thus, "[i]n cases to which § 1252(g) applies, the rest of § 1252 is

incorporated through the 'except as provided in this section' clause." Reno v. American-Arab

Anti-Discrimination Comm., 525 U.S. 471, 486 (1999) (quoting 8 U.S.C. § 1252(g)). "[T]he rest

of § 1252," in turn, provides for judicial review by district courts only in certain limited

circumstances which are inapplicable here. Id.; see, e.g., 8 U.S.C. §§ 1252(b)(5)(B) (directing

transfer to the district court where "the petitioner claims to be a national of the United States and

the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is

presented"), 1252(b)(7)(a) (permitting district court jurisdiction over a challenge to the validity

of a removal order where the petitioner is "a defendant in a [pending] criminal proceeding

charged with violating [8 U.S.C. § 1253(a)]"), and 1252(e)(A) (providing for district court

review of claims regarding the constitutionality of 8 U.S.C. § 1225(b), which governs expedited

removal of inadmissible arriving aliens, or the validity of regulations promulgated thereunder).

In all other respects, the jurisdiction vested in the federal courts by § 1252 resides within the

various circuit courts of appeal. See, e.g., 8 U.S.C. §§ 1252(a)(2)(D) (permitting "review of

constitutional claims or questions of law raised upon a petition for review filed with an

appropriate court of appeals in accordance with this section"), (a)(5) (stating that "a petition for

review filed with the appropriate court of appeals in accordance with this section shall be the sole

and exclusive means for judicial review of an order of removal entered or issued under any

provision of this chapter"), and (b)(2) (stating that the petition for review of an order of removal

"shall be filed with the court of appeals for the judicial circuit in which the immigration judge

completed the proceedings"). Accordingly, the Court agrees with the respondents that § 1252(g) forecloses the assertion of jurisdiction by district courts over any claim, including petitions for writ of mandamus, "filed by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" under the INA.[11] 8 U.S.C. § 1252(g).

However, that is not the end of the jurisdictional inquiry. It is unclear from the statutory language whether the action challenged by the petitioners—that is, the USCIS's alleged failure to adjudicate the April 2001 I-130 petition seeking classification of Malhi as an alien spouse eligible for adjustment of status, see Pets.' Opp. at 1—constitutes a "decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders" within the meaning of the INA's jurisdictional provisions. 8 U.S.C. § 1252(g). In Reno, after a lengthy examination of § 1252(g), the Supreme Court squarely held that the provision "applies to only a limited subset of deportation claims," Reno, 525 U.S. at 487 (emphasis added), rather than "referring to all claims arising from deportation proceedings," id. at 482. These "three discrete actions," id.—the commencement of proceedings, the adjudication of cases, and the execution of removal orders—"represent the initiation or prosecution of various stages in the deportation process[, at

_____

[11]  The Court notes that with the dissolution of the INS and the transfer of many immigration-related functions to agencies under the authority of the DHS, the proscription of § 1252(g) against judicial review of "decision[s] or action[s] by the Attorney General," rather than "the Attorney General or the Secretary of Homeland Security," is somewhat outdated and incongruent. 8 U.S.C. § 1252(g); see 6 U.S.C. § 271 (stating that the USCIS is responsible for the adjudication of all immigrant visa petitions, naturalization petitions, asylum and refugee petitions, and "[a]ll other adjudications [previously] performed by the [INS]"); 8 U.S.C. § 1103 (2006) (stating that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of [the INA] and all other laws relating to the immigration and naturalization of aliens, except insofar as [the INA] or such laws relate to the power, functions, and duties conferred upon" various other Executive Branch officials, including the Attorney General).

14

which point] the Executive has discretion to abandon the [removal] endeavor," id. at 483. And, as the Reno Court observed,

> [t]here are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.

Id. at 482. These "other decisions or actions" are not the focus of § 1252(g), id., and this Court cannot say with certainty—particularly without having the benefit of a response from the petitioners regarding the jurisdictional reach of § 1252(g) in this case—whether, and to what extent, the failure to act complained of by the petitioners should be counted among them. Given the Supreme Court's "narrow reading of § 1252(g)," id. at 487, and considering that neither the District of Columbia Circuit nor any of the other Circuit Courts of Appeal have since described the boundaries and scope of the provision's broadly drawn language with any greater specificity, the Court is inclined to bypass the question of § 1252(g)'s jurisdictional reach in this instance and proceed directly to a consideration of the respondents' other, more clearly dispositive arguments. See Royal Siam Corp. v. Chertoff, ___ F.3d ___, ___, 2007 WL 1228792, at *4 (1st Cir. Apr. 27, 2007) (declining to decide question of district court's jurisdiction over action against the USCIS where "[o]n the one hand, the jurisdictional question is not only thorny but also a matter of statutory, not constitutional, dimension[,] and its proper resolution is uncertain[,] . . . [and] [o]n the other hand, the outcome on the merits is foreordained"); but cf. Sadhvani v. Chertoff, 460 F. Supp. 2d 114, 120-21 (D.D.C. 2006) (finding that the INA "funnels review of the final decisions of the BIA to the regional courts of appeal[] and explicitly divests district[] courts of jurisdiction to review not just final orders of removal themselves, but also ancillary

claims arising from the Executive Branch's decisions").  It may be that § 1252(g) in fact curtails judicial review by district courts of actions which simply relate, in some articulable fashion, to "[the] commence[ment] [of] proceedings, [the] adjudicat[ion] [of] cases, and [the] execut[ion] [of] removal orders."  8 U.S.C. § 1252(g).  However, it is unnecessary to make that determination here.

B. *The Consequences of Malhi's Failure to Voluntarily Depart*

The respondents also argue that the petitioners have failed to state a claim upon which relief can be granted because Malhi's refusal to honor his agreement with the United States government and voluntarily depart the country by April 20, 2004, renders him statutorily ineligible to receive the relief sought in this petition (or, indeed, any relief concerning adjustment of status) for a ten-year period.  Resps.' Mem. at 5-7 (citing 8 U.S.C. § 1229c(d)).  The Court agrees.

Under 8 U.S.C. § 1229c, "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense . . . in lieu of being subject to [deportation or removal proceedings] or prior to the completion of such proceedings."  8 U.S.C. § 1229c(a)(1).  Voluntary departure is therefore "the result of an agreed-upon exchange of benefits between an alien and the [United States] [g]overnment" wherein the alien consents to leave the country of his own volition by a prescribed date rather than be put through involuntary removal proceedings.  Banda-Ortiz v. Gonzales, 445 F.3d 387, 389 (5th Cir. 2006); see also Zazueta-Carrillo v. Ashcroft, 322 F.3d 1166, 1173 (9th Cir. 2003) (stating that "[t]he purpose of voluntary departure is . . . to encourage the alien to depart without further ado").  As such, voluntary departure "is not granted 'unless the alien requests [it] and agrees to its terms and conditions.'"  Banda-Ortiz, 445

16

F.3d at 389 (quoting 8 C.F.R. § 240.25(c) (2007)).  "By requesting voluntary departure, an alien represents that he has the intent to leave the country within the specified time period."  Id. (citing 8 U.S.C. § 1229c(b)(1)(D)); see also Medina-Morales v. Gonzales, 371 F.3d 520, 530 (9th Cir. 2004) (stating that under a voluntary departure agreement, "[t]he government affords the alien a more convenient means of leaving the [United States], and . . . the alien assures the government that he will not further press his right to remain").  If an alien makes this representation, "he gain[s] access to the numerous benefits that voluntary departure provides, including[, inter alia,] freedom from extended detention while the government prepares for his removal[,] . . . avoidance of the stigma of forced removal[,] . . . and . . . continued eligibility for an adjustment of status." Banda-Ortiz, 445 F.3d at 389-90 (citation omitted).  In return, the government is spared the cost and trouble of removing the alien forcibly.  See id. at 390 (stating that "[t]he [voluntary departure] statutory scheme reveals Congress' intention to offer an alien a specific benefit—exemption from the ordinary bars on subsequent relief—in return for a quick departure at no cost to the government") (internal quotation marks and citation omitted); see also Alimi v. Ashcroft, 391 F.3d 888, 892 (7th Cir. 2004) (stating that "[v]oluntary departure confers substantial benefits compared with involuntary removal, and this difference provides an incentive to depart without dragging out the process and without requiring the agency and the courts to devote resources to the matter").  "The privilege of voluntary departure [therefore] provides benefits to both the government and the alien, but with the benefits come attendant responsibilities." Dacosta v. Gonzales, 449 F.3d 45, 51 (1st Cir. 2006) (internal quotation marks and citation omitted).  In addition, "[a] failure to honor those responsibilities results in mandatory sanctions," id., and "an alien cannot resist to the bitter end and still claim [the] benefits [of

17

agreeing to depart voluntarily]," <u>Alimi</u>, 391 F.3d at 892, nor can he stay in the country past his voluntary departure date without breaching his agreement with the United States government and forfeiting any benefits afforded by the grant of voluntary departure.  See 8 U.S.C. § 1229c(d) (prescribing penalties for failure to voluntarily depart); <u>cf.</u> <u>Banda-Ortiz</u>, 445 F.3d at 390 (stating that "if the alien does not depart promptly, . . . the [g]overnment becomes more involved in further and more costly procedures by his attempts to continue his illegal stay here, [and] the original benefit to the [g]overnment is lost") (internal quotation marks and citation omitted).

Indeed, "[t]he penalties for failing to depart within the designated voluntary departure period are significant."  <u>Khalil v. Ashcroft</u>, 370 F.3d 176, 177 (1st Cir. 2004).  Under 8 U.S.C. § 1229c(d), "if an alien is permitted to depart voluntarily . . . and voluntarily fails to depart the United States within the time period specified, the alien . . . shall be subject to [civil monetary penalties] . . . and shall be ineligible, for a period of 10 years, to receive any further relief under this section" and various other sections of the INA, including the section governing applications for adjustment of status.  8 U.S.C. § 1229c(d)(1).  Section 1229c(d) thus "bars an alien [for ten years] from receiving an adjustment of status where the alien has previously failed to depart the United States within the deadline of a voluntary departure order."  <u>Dacosta</u>, 449 F.3d at 49 (citation omitted); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Singh v. Gonzales</u>, 468 F.3d 135, 136-37 (2d Cir. 2006) (same). As the First Circuit has observed, "[v]iolators [of voluntary departure orders] . . . are ineligible for ten years for further grants of voluntary departure, cancellation of removal, adjustment of status, change of nonimmigrant classification, or <u>creation of a record of lawful admission for permanent residence</u>."  <u>Khalil</u>, 370 F.3d at 177 (emphasis added) (citation omitted).

Here, Malhi does not dispute that he has long overstayed the time period allotted for his voluntary departure.  See generally Pets.' Opp.; see also Pet.'s Brief at *6 (noting that "[o]n March 10, 2004, [Malhi] received a bag and baggage letter[] to report for deportation on April 20, 2004").  He is therefore inarguably barred from receiving an adjustment of status—or various other forms of relief under the INA, including the "creation of a record of lawful admission for permanent residence," Khalil, 370 F.3d at 177 (citation omitted)—for a period of ten years.  8 U.S.C. § 1229c(d).  See Banda-Ortiz, 445 F.3d at 389 (finding that the petitioner was statutorily ineligible for adjustment given "the clarity with which [§ 1229c(d)] speaks and [the petitioner's] undisputed failure to depart timely [in accordance with a voluntary departure order]"); Jupiter v. Ashcroft, 396 F.3d 487, 491 (1st Cir. 2005) (finding that a petitioner who had failed to depart voluntarily by the prescribed deadline "[fell] squarely within the plain language of [§ 1229c(d)] and . . . [was] statutorily ineligible for adjustment of status").  Moreover, to the extent that Malhi seeks to preserve the April 2001 filing date of his I-130 relative immigrant petition in order to facilitate his "ability to adjust his status as a beneficiary of that petition," such relief would be absolutely fruitless.  Pets.' Opp. at 3.  Were the USCIS to recognize that the Form I-130 was initially filed on Malhi's behalf prior to April 30, 2001, that would presumably remove one obstacle in Malhi's quest to be eligible for an adjustment of status.  See 8 U.S.C. § 1255(i)(1)(B)(i) (permitting illegal aliens who have filed I-130 petitions by April 30, 2001, to be eligible for adjustment).  However, even if the earlier I-130 date was recognized, this recognition would not, and could not, "nullify § 1229c(d)'s preclusive effect on [Malhi's] application for adjustment of status or otherwise relieve him of the consequences of his failure to depart voluntarily."  Singh, 468 F.3d at 137; see also Dacosta, 449 F.3d at 50-51 (holding that later

19

agency action cannot "retroactively nullify" the consequences of a petitioner's failure to comply with a voluntary departure order) (citations omitted).  Thus, "[b]ecause [Malhi] did not abide by the terms of the voluntary departure, [he] became ineligible for cancellation of removal [or any other relief pertaining to an adjustment of status]," <u>regardless</u> of the resolution of his April 2001 I-130 petition.  <u>Tapia-Martinez v. Gonzales</u>, 142 Fed. Appx. 882, 2005 WL 1799382, at **3 (6th Cir. July 28, 2005).

Malhi's "failure to depart voluntarily has . . . caused [the USCIS] to become involved in further and more costly procedures . . . that could have been avoided had [he] complied with the original order" that he himself requested, and this Court "do[es] not have the . . . power to lift the statutory bar against . . . [the relief now sought by Malhi as a result] of [his] failure to abide by the Order of Voluntary Departure."  <u>Barker v. Ashcroft</u>, 382 F.3d 313, 317 (3rd Cir. 2003) (internal quotation marks and citations omitted); <u>cf.</u> <u>Zazueta-Carrillo</u>, 322 F.3d at 1172 (stating that "[t]he [immigration] statute[s] and regulations provide that the executive branch, rather than the courts, shall specify when aliens must depart voluntarily").  Indeed, if the ten-year bar of § 1229c(d) against those who have violated their voluntary departure order is not strictly construed, "[a]n alien granted the privilege of voluntary departure could simply petition [the courts]—however meritless his petition—and thereby gain many additional months [or years] in the United States, in open, judicially sanctioned defiance of the [voluntary departure] order."  <u>Id.</u> at 1174.  The Court must therefore grant the respondents' motion to dismiss the petition for a writ of mandamus.

C.  *The Petitioners' Request for Mandamus Relief*

Even if the petitioners were not statutorily barred from receiving the relief that they seek

as a consequence of Malhi's failure to adhere to the terms of his voluntary departure order, see 8

U.S.C. § 1229c(d)(1), the respondents' motion to dismiss the petition for a writ of mandamus

must nevertheless be granted.  As the respondents ably argue, "the USCIS's choice of

administrative processes for adjudicating the Form I-130s[] and evaluting their sufficiency[] is

committed to [the agency's] unreviewable discretion," Resps.' Mem. at 17, and the

"extraordinary remedy" of mandamus relief is therefore unwarranted, id. at 14 (emphasis

omitted).  In response, the petitioners simply assert that they are entitled to mandamus relief on

the basis of "unreasonable agency delay" in adjudicating Kaur's April 2001 I-130 petition.  Pets.'

Opp. at 6.  The Court agrees with the respondents that the petitioners have not demonstrated that

the USCIS possessed a "clear and indisputable" duty, when confronted with two nearly identical

I-130 petitions filed on behalf of the same alien, to consider the earlier-filed petition rather than,

or even in addition to, the later-filed petition.  Lozada Colon v. Dep't of State, 170 F.3d 191, 191

(D.C. Cir. 1999) (internal quotation marks and citation omitted).

"[The] writ of mandamus . . . is intended to provide a remedy for a [petitioner] only if he

has exhausted all other avenues of relief and only if the [respondent] owes him a clear

nondiscretionary duty."  Heckler v. Ringer, 466 U.S. 602, 616 (1984); see also Doe v. Exxon

Mobil Corp., 473 F.3d 345, 353 (D.C. Cir. 2007) (stating that "mandamus is an extraordinary

remedy reserved for really extraordinary cases") (internal quotation marks and citation omitted).

Moreover, mandamus relief is appropriate "only where the duty to be performed is ministerial

and the obligation to act peremptory and clearly defined.  The law must not only authorize the

21

demanded action, but require it; the duty must be clear and indisputable." <u>Lozada Colon</u>, 170

F.3d at 191 (internal quotation marks and citation omitted).

Here, the petitioners filed an I-130 petition and an I-485 petition on April 28, 2001.  Pet.

¶ 11.  When the USCIS indicated that it had no record of an I-485 petition being filed, <u>see</u> <u>id.</u>,

Ex. 9 (February 14, 2005 letter from USCIS to Balwinder Malhi) at 1, the petitioners filed a

second pair of petitions on February 22, 2005.  <u>Id.</u> ¶ 16.  It appears clear that the petitioners'

circumstances had changed in certain significant respects between the filing of the two sets of

petitions.  For example, in the intervening three years, two children had been born to the

petitioners, Pet. ¶ 10, Malhi agreed to voluntarily depart the country, Resps.' Mem. at 1; Pet.'s

Brief at *4, and Kaur became a naturalized United States citizen, Pet. ¶ 13.  To the extent that the

April 2001 I-130 petition was therefore outdated, particularly with regard to Kaur's newly

attained citizenship, while the February 2005 I-130 petition reflected the more current

information, the latter effectively superseded the former, and it is difficult for this Court to

fathom any reason why the USCIS might be compelled to consider them both.  In effect, the

petitioners seek to reap the benefits of both the earlier-filed I-130 petition, which was submitted

to what was then the INS two days before illegal aliens like Malhi became absolutely ineligible

for an adjustment of status, <u>see</u> 8 U.S.C. § 1255(i)(1)(B)(i), <u>and</u> the later-filed I-130 petition,

which, because it was submitted after Kaur had attained naturalized United States citizenship,

freed Malhi from the restrictive and lengthy quota system applicable to the allocation of relative

immigrant visas to spouses of LPRs, <u>compare</u> 8 U.S.C. §§ 1151(a)(1), 1153(a)(2)(A) <u>with</u> 8

U.S.C. § 1151(a)(2)(A)(1).  The petitioners have offered no support for their implicit proposition

that the USCIS officer tasked with adjudicating Kaur's I-130 petition for relative immigrant

status on behalf of her husband was compelled to understand the importance of the earlier date and, moreover, make it applicable to the later petition.

"Absent constitutional constraints or extremely compelling circumstances, . . . administrative agencies should be free to fashion their own rules of procedure . . . [in a manner that facilitates the] discharge [of] their multitudinous duties." Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, 435 U.S. 519, 543 (1978) (internal quotation marks and citations omitted). "Reviewing courts have therefore been cautioned 'against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress.'" Rahman v. McElroy, 884 F. Supp. 782, 787 (S.D.N.Y. 1995) (quoting Vermont Yankee, 435 U.S. at 525); see also id. (dismissing petitioner aliens' mandamus action where INS had "a clear duty to interview the [petitioners], but [no duty] to schedule those interviews on any particular day or in any special sequence," even though the petitioners were adversely affected by the agency's scheduling decision); cf. Bachkova v. INS, 109 F.3d 376, 378 (7th Cir. 1997) (stating that the Seventh Circuit "do[es] not insist on a particular order to the[] steps followed by the immigration agency adjudicating asylum determinations"). The petitioners have pointed to no statutory or regulatory provision, nor even relevant caselaw, that would indicate that the USCIS possessed a "clearly defined" obligation to apply the date of the earlier-filed I-130 petition when adjudicating the later-filed petition. Lozada Colon, 170 F.3d at 191 (internal quotation marks and citation omitted). Furthermore, any prejudice that might have befallen Malhi as a result of the USCIS's failure to timely adjudicate the April 2001 petition—most notably, the loss of his eligibility for adjustment of status under 8 U.S.C. § 1255(i)(1)(B)(i)—was thoroughly vitiated by Malhi's failure to comply with his voluntary departure order and the Ninth

Circuit's subsequent denial of his petition to reopen his removal proceedings. Accordingly, even

if there was no statutory bar to the relief that Malhi is seeking, the Court concludes that the

petitioners have not otherwise demonstrated that they are entitled to the "extraordinary remedy"

of mandamus. Exxon Mobil Corp., 473 F.3d at 353.

### IV. Conclusion

For the foregoing reasons, the Court concludes that the petitioners have failed to state a

claim upon which relief can be granted. Accordingly, the respondents' motion to dismiss is

granted, and the petitioners' Amended Petition for a Writ of Mandamus and Declaratory

Judgment is hereby dismissed.

**SO ORDERED** this 31st day of May, 2007.[12]

REGGIE B. WALTON
United States District Judge

---

[12] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.